# United States Court of Federal Claims
No. 17-1263C
Filed: May 30, 2018

|  |  |
|---|---|
| ROBERT E. FEISS, M.D., | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE UNITED STATES, | ) |
|  | ) |
| Defendant. | ) |

*Natasha A. Saggar Sheth*, Nossaman, LLP, San Francisco, CA, counsel for plaintiff.

*Sean King*, U.S. Department of Justice, Civil Division, Washington, D.C., counsel for defendant.

## OPINION AND ORDER

**SMITH, Senior Judge**

    This is not a just decision, but it is one that the law requires. It appears that, through no fault of his own, plaintiff has lost over $39,000 in government Medicare incentive payments that he was entitled to by providing Family Practice services. However, 42 U.S.C. section 1395l(x)(4) prohibits judicial or administrative review of the government's coding system, which determines who is classified as a Family Practice physician. The evidence strongly supports plaintiff's argument that he was providing Family Practice services and should have been classified as such, but a coding error denied plaintiff this status for several years. It is not the role of this Court to dispense "justice" as it sees fit. Rather, the role of this Court is to decide cases pursuant to the legal rules and statutes established by the legislative branch. Typically, that leads to justice. In the rare case in which it does not, the Court cannot ignore the statute and act above the law to impose its own view of justice. Doing so would make a mockery of the judicial system and the separation of powers upon which liberty depends. It would also violate the Judge's oath. Above all, the Court must hold justice under the law as its First Commandment.

    This matter is before the Court on defendant's Motion to Dismiss. Plaintiff, Robert E. Feiss, M.D. ("Dr. Feiss"), alleges that the government breached its contractual duty by wrongfully withholding incentive payments owed to Dr. Feiss through the Patient Protection and Affordable Care Act's ("ACA") Primary Care Incentive Payment Program ("PCIP"). Dr. Feiss seeks monetary relief in the amount of $39,709.66, plus costs and interest. The government argues that plaintiff's Complaint must be dismissed because the authorizing statute, 42 U.S.C. section 1395l(x)(4) (2010), precludes judicial review, and because plaintiff's claims are barred

by the statute of limitations.  Alternatively, the government asserts that plaintiff fails to establish the elements of a breach of implied contract claim, and thus fails to state a claim upon which relief can be granted.  After careful review and for the reasons that follow, the Court grants defendant's Motion to Dismiss.

**I.      Background**

   **A.  Factual History**

Plaintiff, Dr. Feiss, has been a primary care physician since 2002.  Complaint (hereinafter "Compl.") at 1.  During his practice, Dr. Feiss has been enrolled as a Medicare supplier with a primary specialty designation of "[F]amily [P]ractice."  Compl. at 2.  According to Dr. Feiss, 90 percent or more of Dr. Feiss' allowed charges since 2002 have been for his provision of primary care services.  *Id.*  In 2010, Congress enacted the ACA, which created PCIP by adding section 1833(x) to the Social Security Act ("SSA"), codified at 42 U.S.C. section 1395l(x).  *See generally* 42 U.S.C. § 1395l(x).  Through PCIP, eligible primary care physicians may collect incentive payments for primary care services rendered from January 1, 2011, through January 1, 2016.  *See* § 1395l(x)(1); Compl. at 2; *see also* 42 C.F.R. § 414.80 (2011) (mirroring 42 U.S.C. § 1395l(x)).  To qualify as an eligible "primary care practitioner," a physician must be enrolled in Medicare as a supplier with a "primary specialty designation of [F]amily [M]edicine, [I]nternal [M]edicine, [G]eriatric [M]edicine, or [P]ediatric [M]edicine," and provide primary care services for at least 60 percent of a physician's allowed charges per year.  § 1395l(x)(2)(A); Compl. at 2.  In addition to the amount of payment that would otherwise be made for primary care services provided, eligible physicians, under PCIP, "also shall be paid . . . an amount equal to 10 percent of the payment amount for [their services] . . . ."  § 1395l(x)(1); Motion to Dismiss (hereinafter "MTD") at 3.  While physicians are not required to enroll in PCIP to participate, the Centers for Medicare and Medicaid Services ("CMS") identifies such eligible physicians through National Provider Identifier ("NPI") numbers, based on physicians' histories of Medicare claims.  MTD at 3.

In 2010, Dr. Feiss confirmed his PCIP eligibility, which was set to begin in 2011, through CMS contractor Palmetto GBA ("Palmetto"), by searching for his NPI number on Palmetto's website.  Compl. at 3.  After failing to receive PCIP payments throughout most of 2011, Dr. Feiss contacted Palmetto, which confirmed Dr. Feiss' PCIP eligibility and informed Dr. Feiss that such payments were forthcoming, albeit delayed.  *Id.* at 3-4.  After 18 months of nonpayment, Dr. Feiss was informed that he was ineligible for PCIP because his specialty identification had been miscoded in CMS' system as "Emergency Medicine" rather than "Primary Care."  *Id.* at 4.  Palmetto explained that "[t]here were issues with the PCIP tool on [its] website" and that it had "received a corrupted file that was loaded and therefore provid[ed] incorrect information."  Plaintiff's Exhibit (hereinafter "P's Ex.") 3.  Palmetto indicated that Dr. Feiss could receive his PCIP payments so long as Palmetto received authorization from CMS to correct the coding error.  Compl. at 4.  On or about December 30, 2013, CMS held a phone conference with Dr. Feiss, wherein all present CMS representatives, CMS contractors, and Dr. Feiss agreed to the following: (1) Dr. Feiss provided primary care services during all relevant times; (2) 94 percent of Dr. Feiss' patient care codes were primary care codes; and (3) Dr. Feiss had provided the services for which he was seeking PCIP payment.  Compl. at 5.  After Dr. Feiss

requested assistance from both CMS and Palmetto, which relinquished its contract to Noridian Healthcare Solutions, LLC ("Noridian"), Dr. Feiss learned that he was ineligible for PCIP in years prior to 2014 because his listed Medicare specialty did not qualify him for PCIP under the SSA.  *See* MTD at 4 (referencing 42 U.S.C. § 1395l(x)(2)(A)).  Only after Dr. Feiss corrected his specialty to "[F]amily [P]ractice," CMS explained, did Dr. Feiss become PCIP eligible.  *Id.* at 4-5.

Subsequently, on July 22, 2016, Dr. Feiss filed a request for a hearing before an administrative law judge ("ALJ") at the Department of Health and Human Services ("HHS"), which was dismissed on the grounds that the SSA explicitly states that "[t]here shall be no administrative or judicial review . . . respecting the identification of primary care practitioners under this subsection."  42 U.S.C. § 1395l(x)(4); MTD at 3-5.  On March 17, 2017, the HHS Departmental Appeals Board, Appellate Division, issued its Final Decision, upholding ALJ's dismissal of Dr. Feiss' request for a hearing.  Compl. at 7; MTD at 5.

### B. Procedural History

On September 15, 2017, Dr. Feiss filed his Complaint in this Court against CMS and HHS, seeking PCIP payments from 2011, 2012, 2013, and the first three quarters of 2014.  Compl. at 12.  Dr. Feiss asserts that CMS, by withholding those PCIP payments, breached its implied contract and violated 42 U.S.C. section 1395l(x) and its governing regulation, 42 C.F.R. section 414.80.  MTD at 5.

On November 14, 2017, the government filed its Motion to Dismiss, arguing that the Court should dismiss Dr. Feiss' Complaint for lack of subject-matter jurisdiction, or, in the alternative, for failure to state a claim upon which relief could be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC _").  *Id.* at 1, 5.  Specifically, the government asserts that 42 U.S.C. section 1395l(x)(4) explicitly precludes judicial review of CMS' identification of primary care practitioners.  *Id.* at 7.  Although section 1395l(x)(4) allows for agency review of mathematical or clerical errors involving PCIP eligibility, the government argues that such statutory interpretation does not open the door to further administrative or judicial review.  *Id.* at 7-8.  Additionally, the government alleges that the statute of limitations has run according to 28 U.S.C. section 2501.  *Id.* at 1 (relying on 28 U.S.C. § 2501 (2004)).  Finally, the government argues that, this Court should dismiss Dr. Feiss' Complaint under RCFC 12(b)(6), as Dr. Feiss failed to establish a valid claim for breach of implied contract.  *Id.* at 9.

In his Response, Dr. Feiss argues the following three points: (1) the government mischaracterizes the claims made in his Complaint; (2) the government's representation that the PCIP payments were delayed but forthcoming postponed Dr. Feiss' realization of his potential claims; and (3) section 1395l(x) falls within the narrow category of statutes that bind the government in contract.  Plaintiff's Opposition to Defendant's Motion to Dismiss (hereinafter "P's Resp.") at 6, 9-12.  In its Reply, the government argues that Dr. Feiss "mischaracterizes his suit as one simply requesting payments that he is owed, stating that there is no dispute as to his identification as a qualifying primary care practitioner."  Defendant's Reply in Support of its Motion to Dismiss (hereinafter "D's Reply") at 2.  Additionally, the government reiterates its

arguments that the statute of limitations has run and that section 1395l(x)(4) does not bind the government in contract. D's Reply at 7-8 (referencing *ARRA Energy*, 97 Fed. Cl. 12, 27 (2011) (citing *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465-66 (1985)); *Moda Health Plan, Inc. v. United States*, 130 Fed. Cl. 436, 463 (2017)). The government further bolsters this assertion by stating that "PCIP is nothing more than a statute and accompanying regulation that CMS may be obligated to follow without any contractual duty to perform." *Id.* at 7 (citing *Land of Lincoln Mut. Health Ins. Co. v. United States*, 129 Fed. Cl. 81, 112 (2016)). The Court held Oral Argument on defendant's Motion to Dismiss on February 12, 2018. Defendant's Motion to Dismiss is fully briefed and ripe for review.

## II. Discussion

This Court's jurisdictional grant is found primarily in the Tucker Act, which provides the Court of Federal Claims with the power "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2012). Although the Tucker Act explicitly waives the sovereign immunity of the United States against such claims, it "does not create any substantive right enforceable against the United States for money damages." *United States v. Testan*, 424 U.S. 392, 398 (1976). Rather, to fall within the scope of the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part).

### A. Statutory Bar Under 42 U.S.C. § 1395l(x)(4)

Subject-matter jurisdiction is a threshold matter that must be addressed before the Court evaluates the merits of plaintiff's claims. *See Deponte Invs., Inc. v. United States*, 54 Fed. Cl. 112, 114 (2002) (referencing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)). When considering a motion to dismiss for lack of subject-matter jurisdiction, the Court must accept as true all undisputed facts asserted in plaintiff's complaint and draw all reasonable inferences in plaintiff's favor. *See Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)). Plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *See Grayton v. United States*, 92 Fed. Cl. 327, 331 (referencing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)). "If the [C]ourt determines at any time that it lacks subject-matter jurisdiction, the [C]ourt must dismiss the action." RCFC 12(h)(3).

The government contends that this Court lacks subject-matter jurisdiction to entertain Dr. Feiss' Complaint because, pursuant to the SSA, which governs the provision of PCIP payments at issue, "[t]here shall be no administrative or *judicial review* . . . respecting the identification of primary care practitioners under this subsection." 42 U.S.C. § 1395l(x)(4) (emphasis added). Dr. Feiss asserts that his cause of action is based on CMS' nonpayment of PCIP incentive payments, stemming from an unspecified clerical error by CMS wherein Dr. Feiss' primary special designation was miscoded. Compl. at 10; P's Resp. at 6. Dr. Feiss alleges that the statutory bar under section 1395l(x)(4) is inapplicable to his claims because he is not seeking

review of CMS' "identification of primary care practitioners," but, rather, a review of CMS' nonpayment of PCIP payments. P's Resp. at 6. While the government acknowledges this nonpayment, the government explains that it is due to the misidentification of Dr. Feiss' primary specialty, cementing the applicability of that statutory bar to Dr. Feiss' claims. MTD at 5.

Absent CMS' misidentification of his Medicare specialty, Dr. Feiss would have received PCIP payments for eligible services rendered throughout the period at issue, as a qualified primary service provider under the SSA. Thus, CMS' miscoding of Dr. Feiss' specialty as "Emergency Medicine" rather than "Primary Care" was a clerical error that caused the nonpayment of PCIP payments currently at issue. The Court recognizes that Dr. Feiss is not at fault for this misidentification and appreciates his attempts to rectify the error. However, his Complaint, which exclusively involves his identification as a primary care practitioner, is the very type of complaint Congress precludes this Court from reviewing under section 1395l(x)(4). In order to entertain Dr. Feiss' Complaint, this Court must examine Dr. Feiss' designation as an ineligible PCIP primary care practitioner, which section 1395l(x)(4) expressly prohibits. Accordingly, this Court lacks the necessary subject-matter jurisdiction to entertain plaintiff's claims, and review of those claims is statutorily barred by 42 U.S.C. section 1395l(x)(4).

### B. Breach of Implied Contract Claim

It is well-settled that a complaint should be dismissed for failure to state a claim upon which relief can be granted "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) (citing *Boyle v. United States*, 200 F.3d 1369, 1372 (Fed. Cir. 2000)). When considering a motion to dismiss brought under RCFC 12(b)(6), "the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Still, the Court must inquire whether the complaint meets the "plausibility" standard described by the U.S. Supreme Court, *i.e.*, whether the complaint adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 560, 563 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Additionally, pursuant to the Tucker Act, this Court has jurisdiction to hear claims brought against the government based upon "express or implied contract[s]." 28 U.S.C. § 1491(a)(1); *see also Mendez v. United States*, 121 Fed. Cl. 370, 378 (2015). The following elements are necessary for the formation of a valid government contract: (1) offer; (2) acceptance; (3) consideration; and (4) government agent authority. MTD at 9 (referencing *Hanlin v. United States*, 316 F.3d 1325, 1329-31 (Fed. Cir. 2003) and *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1434 (Fed. Cir. 1998)).

Plaintiff alleges that the SSA and its regulations created an implied contract between Dr. Feiss and CMS, wherein Dr. Feiss served as a supplier of primary care services in exchange for full, timely payments for those services provided. Compl. at 11. Dr. Feiss asserts that the implied contract was confirmed by statements and actions of both parties. *Id.*; P's Resp. at 13 (referencing *Moda Health Plan*, 130 Fed. Cl. at 463 ("In short, statutes or regulations show the [g]overnment's intent to contract if they have the following implicit structure: if you participate

in this program and follow its rules, we promise you will receive a specific incentive.")). Specifically, Dr. Feiss alleges that, having fully performed his contractual obligations by submitting proper billing for the primary care services provided to Medicare recipients, he is entitled to PCIP payments for the services provided throughout the period at issue. Compl. at 11. Dr. Feiss further contends that CMS has breached its contractual duty by failing to make such payments. *Id*. Finally, Dr. Feiss argues that section 1395l(x) falls within the narrow category of statutes that bind the government in contract, and CMS lacked the discretion to withhold PCIP payments once Dr. Feiss accepted CMS' offer by performance.[1]  P's Resp. at 12-14.

In response, the government argues that, as "[t]here is a general presumption that statutes are not intended to create any vested contractual rights," Dr. Feiss has failed to allege the elements of a contract with the government under RCFC 12(b)(6). *See* MTD at 9 (quoting *ARRA Energy*, 97 Fed. Cl. at27 (citing *Nat'l R.R. Passenger Corp.*, 470 U.S. at 465-66)). Dr. Feiss attempts to distinguish this case from *ARRA Energy*, alleging that *ARRA Energy* involved no continuing services or benefits, as plaintiffs' mere filling in the blanks of a government-prepared form does not constitute acceptance by performance, while the present case involves ongoing primary care services, which demonstrate the parties' mutual intent to contract. *See* P's Resp. at 13-14 (citing *Moda Health Plan*, 130 Fed. Cl. at 464 (finding that the ACA created an incentive program for insurers and thereby the government intended to enter into contracts with insurers); *Molina Healthcare*, 133 Fed. Cl. at 45 (finding that the government entered into an implied contract with plaintiff by agreeing to pay plaintiff a specified portion of its losses if plaintiff sold Qualified Health Plans to eligible purchasers)).

Although, in limited circumstances, this Court has held that statutes and regulations may bind the government in contract, PCIP does not fall into such an exception. As this Court has previously stated, "HHS's obligation to make . . . payments when certain conditions are met represents the agency's independent authority and obligation as directed by Congress, not any promissory undertaking or offer . . . .  Thus there is no apparent mutuality of intent to contract." *Land of Lincoln*, 129 Fed. Cl. at 112. Dr. Feiss' allegations that an implied contract existed are

---

[1] In support of his argument, Dr. Feiss relies on two "Risk-Corridor" cases that are currently under appeal. *See* P's Resp. at 12-14 (citing *Moda Health Plan*, 130 Fed. Cl. at 463; *Molina Healthcare of California, Inc. v. United States*, 133 Fed. Cl. 14, 45 (2017)). The government relies on a separate Risk-Corridor case, also currently under appeal, throughout its brief to support its legal theory. *See generally Land of Lincoln*, 129 Fed. Cl. 81. The Court would note that, while these cases directly oppose one another, they are distinguishable from the case at bar. *Moda Health Plan*, *Molina Healthcare*, and *Land of Lincoln* deal with the relationship between the authorizing statute and the insurers. *See, e.g.*, *Molina Healthcare*, 133 Fed. Cl. at 18 n.1 (The Risk-Corridor concept deals with sharing the risk of new health insurance endeavors between insurers and the government in order to encourage more insurers to participate in the new ACA endeavor. Reimbursing certain revenue losses would allow insurers to maintain health insurance premiums for consumers at a lower and more reasonable rate. The insurance companies voluntarily entered into the program based upon the government's promise terms.). The forthcoming decisions from the Federal Circuit are related to the case at bar but not dispositive of the Court's ultimate decision here. This complaint concerns doctors' PCIP payments, rather than the rate of insurance premiums.

merely conclusory and, thus, insufficient to rebut the general presumption that statutes do not automatically create vested contractual rights.  Accordingly, Dr. Feiss has failed to allege that an implied contract exists, and that CMS breached that contract by withholding PCIP payments.  As plaintiff has failed to establish a valid breach of implied contract claim or assert facts that entitle him to a legal remedy, he has not sufficiently stated a claim upon which relief can be granted.

### C. Statute of Limitations

Every claim over which this Court has jurisdiction is subject to a six-year statute of limitations from the date such claim first accrues.  28 U.S.C. § 2501.  Pursuant to the Tucker Act, a claim accrues when a claimant knew or should have known that his claim existed.  28 U.S.C. § 1491(a)(1); *Banks v. United States*, 741 F.3d 1268, 1279-80 (Fed. Cir. 2014).  In other words, "[a] cause of action cognizable in a Tucker Act suit accrues as soon as all events have occurred that are necessary to enable the [claimant] to bring suit, [*i.e.,*] when 'all events have occurred to fix the government's alleged liability, entitling the claimant to demand payment and sue [to recover] his money.'"  *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc) (quoting *Nager Elec. Co. v. United States*, 368 F.2d 847, 851 (Ct. Cl. 1966)).

Here, the government argues that Dr. Feiss knew or should have known about his claim in early- to mid-2011, and, as such, his September 15, 2017 Complaint runs afoul of the six-year statute of limitations.  D's Reply at 5.  While the Court does not agree with the government's statute of limitations argument, this Court must nevertheless dismiss Dr. Feiss' Complaint for lack of subject-matter jurisdiction and failure to state a claim.  As the Court lacks subject-matter jurisdiction to entertain Dr. Feiss' statutorily barred claims, the Court need not analyze the government's argument under 28 U.S.C. section 2501 or evaluate when the statute of limitations began to run.

### D. Conclusion

Construing the facts in the light most favorable to Dr. Feiss, the nonmoving party, the Court finds that 42 U.S.C. section 1395l(x)(4) prohibits administrative or judicial review of plaintiff's claims.  Further, plaintiff has failed to allege the elements of an implied contract, or that the government breached such contract by withholding plaintiff's PCIP payments.  Accordingly, this Court lacks the requisite subject-matter jurisdiction to consider Dr. Feiss' Complaint, and Dr. Feiss has failed to state a claim upon which relief can be granted.

For the reasons set forth above, defendant's MOTION to Dismiss is **GRANTED**.  The Court directs the Clerk of Court to enter judgment in favor of defendant, consistent with this Order.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge